UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT L. STRESING,

                        Plaintiff,

      v.

WARREN AGOSTINONI,
individually and in his official capacity as Assistant
Director of Personnel of New York Department of
Correctional Services,

PETER BROWN,
individually and in his official capacity as Director of
Labor Relations of New York Department of
Correctional Services,

BRIAN FISCHER,
individually and in his official capacity as
Commissioner of the State of New York Department
of Correctional Services,

DANIEL F. MARTUSCELLO III,
individually and in his official capacity as Director of
Human Resources of New York Department of
Correctional Services,

MARIANN AMODIO (nee MAZOROWSKI),
individually and in her official capacity as Labor
Relations Representative of New York Department of
Correctional Services,

                       Defendants.

**DECISION AND ORDER**
11-CV-967S

## I.   INTRODUCTION

Plaintiff commenced this action in November 2011 seeking damages and

declaratory relief pursuant to 42 U.S.C. § 1983 and New York Executive Law § 296 for his

allegedly improper termination from his employment. The operative pleading is Plaintiff's

Second Amended Complaint, filed on September 19, 2012, in which he alleges he was terminated from his civil service position without a hearing in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Pending before this Court is Defendants' Motion for Summary Judgment requesting dismissal of the Second Amended Complaint in its entirety. This Court finds the matter fully briefed and oral argument unnecessary. For the reasons discussed below, Defendants' motion is granted.

## II. BACKGROUND

### A. Plaintiff's Employment

The facts surrounding Plaintiff's employment, including his November 2009 termination, are essentially undisputed.[1] On or about May 16, 1994, the State of New York's Department of Correctional Services ("DOCS")[2] appointed Plaintiff to a probationary term in the position of Correction Officer at the Orleans Correctional Facility. After one year of service, he received a permanent appointment. The title "Correction Officer" is a competitive class title in the classified civil service. N.Y. Civ. Serv. Law § 44. Correction officers are represented by the New York State Correctional Officers & Police Benevolent Association ("the Union"). The Collective Bargaining Agreement ("CBA") between DOCS and the Union expressly provides that discipline of represented employees is governed by the CBA, rather than the otherwise relevant provisions of the

---

1 Plaintiff has responded to just five of the paragraphs in Defendants' 151-paragraph statement of undisputed facts. His comments are more accurately characterized as additions to or expansions on Defendants' facts, rather than counterstatements thereto.

2 Since Plaintiff's termination, DOCS was merged with New York's Division of Parole. The merged entity is now known as the Department of Corrections and Community Supervision ("DOCCS"), but the Court will continue to refer to the employer as DOCS for purposes of this motion.

Civil Service Law:

> Discipline shall be imposed upon employees otherwise subject to the provisions of Sections 75 and 76 of the Civil Service Law only pursuant to this Article, and the procedure and remedies herein provided shall apply in lieu of the procedure and remedies prescribed by such sections of the Civil Service Law which shall not apply to employees.

Docket No. 57-5 ¶ 8, Exh. A § 8.1.

### B. The Disciplinary Process

The CBA specifies that "[d]iscipline shall be imposed only for just cause," and requires that the authority seeking to impose discipline—in this case, DOCS—prepare and serve a written notice of discipline ("NOD") informing the employee of the conduct for which discipline is sought and the recommended penalty. Id. ¶ 9, Exh. A § 8.2(a). Upon service of the NOD, the employee has fourteen days in which to file a grievance challenging the disciplinary action. If no grievance is filed, the recommended penalty is imposed thereafter. An employee who does file a grievance is provided the opportunity to meet with a DOCS representative, either personally or by a Union representative, to present his or her position. This process may result in a Disciplinary Settlement Agreement ("DSA") between DOCS, the Union, and the employee. If the grievance is not resolved, the employee is entitled to a hearing before an arbitrator. The arbitrator's decision on guilt or innocence and the appropriateness of proposed penalties is final and binding.

An Employees' Manual issued by DOCS contains rules for employee conduct. Relevant to this case, Section 2 of the Manual provides:

> 2.1  Personal Conduct. No employee, whether on or off duty, shall so comport himself/herself as to reflect discredit upon the Department or its personnel.

3

> 2.2 <u>Lawful comportment</u>. An employee shall not knowingly or willingly violate any law or ordinance of the United States or the State of New York or any rule, regulation, or directive of the Department. Any conduct constituting disorderly conduct, or a violation which alleges possession and/or use of a controlled substance, or a misdemeanor or a felony may be the basis for disciplinary action whether or not prosecution or a conviction results.

Docket No. 57-4 Exh. B.

Within DOCS, employee discipline is handled by the Bureau of Labor Relations. At the time of the events alleged in the Second Amended Complaint, Defendant Brown was DOCS' Director of Labor Relations, and Defendant Amodio (nee Masurowski)[3] was employed at the Bureau as a Labor Relations Representative.

### C. Plaintiff's Off Duty Conduct and Termination

On or about April 13, 2006, Plaintiff was arrested by the West Seneca Police Department. Based on his wife's allegation that he had punched her twice in the face, Plaintiff was charged with Harassment 2nd. He later was granted an adjournment in contemplation of dismissal ("ACD") and required to attend an anger management course. Defendant Brown issued Plaintiff a letter, dated July 13, 2006, advising that DOCS had been made aware of his arrest, reminding him of the requirement that he "maintain the strictest standards of conduct both on and off duty," and warning that "any similar conduct on your part will lead to serious administrative action that may lead to your dismissal from service." Docket No. 58-5 at 14.

On October 2, 2009, Plaintiff and his wife, Kim Stresing, went to a casino/hotel in the City of Niagara Falls where they got into an argument in their hotel room. According to

---

3 Marianne Mazorowski has changed her last name, and is now known as Marianne Amodio. She will be referred to hereafter as Defendant Amodio.

Plaintiff, his wife was intoxicated and attempted to push him, but missed and fell to the floor sustaining injuries. Docket No. 63 ¶ 3. After his wife was injured, Plaintiff drove from the City of Niagara Falls to the Town of West Seneca's police headquarters, where he was arrested, turned over to the Niagara Falls Police Department, and, charged with Assault 3rd and Menacing 3rd based on his wife's report that Plaintiff had hit her.

After DOCS was notified of this arrest, Gary Simpson, Special Assistant to the Commissioner of DOCS, informed Defendant Amodio that Plaintiff should be suspended. The suspension was imposed on October 6, 2009. Amodio also drafted a NOD for Defendant Brown's signature which stated that Plaintiff's reported conduct and his arrest violated §§ 2.1 and 2.2 of the DOCS Employee Manual, and recommended his dismissal from service.

Plaintiff spoke with Al Mothershed, his Union's Vice President, about the NOD. The Union pursued negotiations on his behalf and, as a result, Bob Pasquini, a Deputy Director of Labor Relations, authorized Defendant Amodio to enter into a DSA with Plaintiff and the Union. The DSA, signed by Plaintiff and a Union representative on October 28, 2009, imposed a 12-month Disciplinary Evaluation Period for "misconduct same or similar to that referenced in the Notice of Discipline dated October 6, 2009." Docket No. 57-4 Exh. C. Plaintiff refers to the DSA as a "last chance agreement."

The DSA specified that:

> The Department may have the original penalty in the Notice of Discipline implemented without further appeal on an employee who is subject to a disciplinary evaluation period if the Department determines that the employee's action or actions during the disciplinary evaluation period are similar to that stated in the aforementioned Notice of Discipline. Neither the Department's determination that the employee's action or actions during the disciplinary evaluation period are similar to that stated in the

> aforementioned Notice of Discipline nor the imposition of the original penalty of said Notice of Discipline shall be subject to review pursuant to the grievance and arbitration procedures of Article 7 (Grievance and Arbitration) or Article 8 (Discipline) of the collective bargaining agreement. The signatures of the employee and the employee's representative herein signify the knowing waiver of any further appeal to the grievance and arbitration procedures of Article 7 or Article 8 of the collective bargaining agreement concerning any Departmental determination or imposition of penalty made under this Disciplinary Settlement Agreement.

Id. Prior to his signing the DSA, Union representatives told Plaintiff he could lose his job if, for example, he got into a fight at a sporting event or in a bar. Mr. Mothershed told Plaintiff if he was arrested for conduct that was the same or similar, he would not be represented by the Union.

On November 5, 2009, as a further consequence of Plaintiff's October 2, 2009 arrest, the Niagara Falls City Court issued a temporary order of protection directing Plaintiff to, among other things, stay away from the home of his estranged wife and refrain from communication with her. On November 23, 2009, Plaintiff was arrested and charged with Criminal Contempt based on Kim Stresing's allegation that he had dropped their son off at her home and had begun verbally abusing her. After Defendant Amodio informed Defendant Brown of the arrest, Brown issued Plaintiff a letter, dated November 25, 2009, terminating Plaintiff from employment on the ground that his recent arrest was a violation of the Disciplinary Evaluation Period and the DSA. The criminal charge against Plaintiff was dismissed on January 8, 2010. Thereafter, Plaintiff sought, but was denied, reinstatement.

### D. The Claim and Pending Motion

Plaintiff alleges, in his Second Amended Complaint, that he has a constitutionally protected property interest in his employment pursuant to New York's Civil Service Law

6

and the CBA. He claims his Fourteenth Amendment right to due process was violated when he was terminated without a hearing, and before he had an opportunity to prove in court that he was innocent of the Criminal Contempt charge.[4]

Defendants have moved for summary judgment on the grounds that Plaintiff waived any right he may have had to a pretermination hearing and he cannot demonstrate Defendants' respective personal involvement in most of the acts of which he complains.

### III. DISCUSSION

#### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id. "An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment." Powell v. National Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

---

4 There was no judicial proceeding that resulted in a verdict of "not guilty." Rather, the criminal contempt charge was dismissed after Kim Stresing executed an affidavit, at Plaintiff's request, noting that a conviction would cause Plaintiff to lose his job, the source of her support, and asking that the charge against him be dismissed.

2004) (citation omitted). In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. Weinstock v. Columbia Univ., 224 F.3d 33, 40 (2d Cir. 2000).

## B. Analysis

A public employee must satisfy a two-step inquiry to establish that he or she was terminated without due process. First, the plaintiff must show he or she had a property right in continued employment protected by the United States Constitution. Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). If such a right exists, the court must determine what process was due, and whether the employee received the required constitutional minimum in his or her particular case. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (articulating balancing test for determining procedural protections demanded by particular situation); Ciambiello v. County of Nassau, 292 F.3d 307, 320 (2d Cir. 2002) (applying Mathews balancing test in context of government employment).

Property interests "are not created by the Constitution," but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. Of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); accord Looney v. Black, 702 F./3d 701, 706 (2d Cir. 2012). In the employment context, a property interest typically is established by showing that, under a governing statute or collective bargaining agreement, the employee cannot be terminated without a hearing. Kelly v. New York City Dep't of Envtl. Prot., No. 13-CV-1110, 2014 U.S. Dist. LEXIS 27039, at *11 (N.D.N.Y.

(Mar. 4, 2014) (citing Ciambiello, 292 F.3d at 313-14).

In this case, Plaintiff contends that both Section 75 of New York's Civil Service Law and the CBA gave rise to a property interest in his continued employment. Defendants maintain that the CBA applicable to Correction Officers during the time period at issue expressly replaced the rights Plaintiff would have derived from § 75 with its own procedures and remedies:

> Discipline shall be imposed upon employees otherwise subject to the provisions of Sections 75 and 76 of the Civil Service Law only pursuant to this Article, and the procedure and remedies herein provided shall apply in lieu of th[ose] . . . prescribed by such sections of the Civil Service Law . . . .

Docket No. 57-5 § 8.1. This Court agrees that the § 75 rights that ordinarily attach to a civil service title "may be modified or replaced by a collective bargaining agreement," Ciambriello, 292 F.3d at 314 (citing N.Y. Civ. Serv. Law § 76(4)), and that is precisely what happened here. Nevertheless, the CBA's procedures and remedies themselves provide for notice and a hearing prior to the imposition of discipline, and Defendants implicitly concede that these provisions gave permanent Correction Officers a protected property interest in their positions.

The crux of Defendants' argument for dismissal is that, regardless of the rights that initially accrued to Plaintiff under the CBA, when he signed the DSA, he waived all rights to the process that gave rise to his property interest. Absent a constitutionally protected interest, Defendants contend, there could be no Fourteenth Amendment deprivation.

In response, Plaintiff urges that: the DSA "did not preclude him from challenging whether a breach of the agreement actually occurred," Docket No. 62 at 6-7, and, alternatively, because the DSA lacks clarity, he did not knowingly waive his right to a

pretermination hearing on that issue, id. at 12. The Court finds these arguments unpersuasive.

New York courts repeatedly have approved of "last chance agreements," such as the DSA, that waive a public employee's pretermination hearing rights, "provided that the waiver is freely, knowingly and openly arrived at, without taint of coercion or duress." Matter of Dominguez v. O'Flynn, 99 A.D.3d 1250, 1251 (4th Dep't 2012) (citation and internal quotation marks omitted); accord Whitehead v. State Dep't of Mental Hygiene, 71 A.D. 2d 653, 654 (2d Dep't 1978) (public employee with permanent status may waive statutory or contractual rights to hearing before dismissal where waiver serves as consideration for curtailment of pending disciplinary proceedings). Plaintiff maintains there are ambiguities in the DSA that would support a finding that his waiver of particular rights was not knowing or voluntary. In particular, he faults the DSA for not specifying the acts that would constitute "same or similar conduct," and for not detailing the right(s) he was waiving. He contends he waived only his ability to challenge a termination for having violated the DSA, and not his right to be heard on the issue of whether particular conduct, in fact, constituted a violation.

The DSA is a simple document, just over a page in length. It was reached in "full satisfaction" of a NOD issued to Plaintiff following his arrest in October 2009. The NOD detailed Plaintiff's involvement in a physical altercation, his ensuing arrest and the criminal charges against him. At minimum then, the DSA's reference to the misconduct discussed in the NOD provided clear notice that a subsequent altercation, arrest, or criminal charge would trigger the discipline DOCS initially sought in the October 6, 2009 NOD. Plaintiff was a high school graduate who, at the time he signed the NOD, had been

10

a DOCS employee for fifteen years and subject to prior discipline. During the three-week period between his receipt of the NOD and signing of the DSA, Plaintiff consulted with union representatives who variously noted that if he got into a fight during the Disciplinary Evaluation Period he would be terminated, and if he got arrested again he would not be represented by the Union. A union representative was present and available when Plaintiff executed the DSA. In sum, not only is the DSA clear on its face, but there is nothing in the record to suggest that its reference to "misconduct same or similar" to that outlined in the NOD (Docket Nos. 57-4 Exh. C; 58-1 at 60-61), did not sufficiently inform Plaintiff of the types of conduct for which he could be immediately terminated such that his waiver was ineffective.

Plaintiff's contention that the DSA did not sufficiently detail the rights he was waiving also is without merit. His protestations notwithstanding, the DSA expressly states that "the Department's determination that the employee's action or actions during the disciplinary evaluation period are similar to that stated in the . . . [NOD] . . . shall [not] be subject to review pursuant to the grievance and arbitrations procedures of Article 7 (Grievance and Arbitration) or Article 8 (Discipline) of the [CBA]." Id. This provision expressly waives the process Plaintiff now claims he remained entitled to—i.e., a hearing prior to termination on the question of whether his third arrest constituted a violation of the DSA.

Indeed, by agreeing that he could be terminated "without further appeal" if DOCS concluded he violated the DSA, Plaintiff waived the very procedures that gave rise to a protected property interest in his employment. To read the DSA as "having any other effect than waiving [Plaintiff's] pretermination hearing rights would be illogical . . . and

11

would place him in the same position as if he never even signed it." <u>Kelly</u>, 2014 U.S. Dist. LEXIS 27039, at *15-16.

The Court notes that there were two points at which Plaintiff could have obtained a hearing. First, when the October 6, 2009 NOD was issued, Plaintiff could have challenged the proposed termination through the grievance and arbitration process. He chose to enter into the DSA and accept its terms as an alternative to the uncertainties of a hearing. Second, as Defendants note, Plaintiff could have contested his termination in a post-deprivation Article 78 proceeding. Instead, Plaintiff seeks post-deprivation relief by way of a § 1983 procedural due process claim. This claim must fail because Plaintiff expressly waived his state-created property interest in such a hearing.

Having determined that Plaintiff did not have a constitutionally-protected property interest in his employment during the Disciplinary Evaluation Period that would give rise to a Fourteenth Amendment claim, the Court need not consider Defendants' further arguments relative to personal involvement.


## IV. CONCLUSION

Plaintiff has failed to raise a material question as to whether he had a property interest in his continued employment, a necessary element of a § 1983 claim. Accordingly, Defendants' Motion for Summary Judgment is granted and the Second Amended Complaint is dismissed in its entirety.

## V. ORDERS

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 57) is GRANTED.

FURTHER that the Second Amended Complaint is dismissed in its entirety.

FURTHER that the Clerk of Court is directed to close this case.


SO ORDERED.

Dated:   May 30, 2014
          Buffalo, New York

                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                 Chief Judge
                                        United States District Court